# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| STEFAN MCCLENDON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:09-CV-312-PRC |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of | ) | |
| the Social Security Administration, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Stefan McClendon on September 25, 2009, and Plaintiff's Motion for Summary Judgment [DE 22], filed on April 14, 2010, along with a Memorandum in Support of his Motion for Summary Judgment.

Plaintiff requests that the Court reverse the decision of the ALJ denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and finding him ineligible for Supplemental Security Income ("SSI") prior to September 10, 2002, and remand to the Commissioner for an award of benefits, or, alternatively, remand this matter for further proceedings. On August 2, 2010, the Commissioner filed a Memorandum in Support of the Commissioner's Decision, to which the Plaintiff filed a reply brief on August 16, 2010. For the following reasons, the Court remands this matter for further proceedings consistent with this Opinion and Order.

## PROCEDURAL BACKGROUND

On November 1, 2001, Plaintiff filed DIB and SSI applications alleging a disability onset date of August 25, 1994. Plaintiff's claims were initially denied on March 21, 2002, and upon reconsideration on May 29, 2002. Plaintiff filed a timely request for a hearing, and it was held on

1

April 7, 2003, before Administrative Law Judge ("ALJ") William J. Wilkin with Plaintiff present, represented by an attorney. On June 16, 2003, ALJ Wilkin issued an unfavorable decision. The Appeals Council vacated the decision and remanded for further administrative proceedings. After holding a second hearing on February 23, 2004, ALJ Wilkin issued a partially favorable decision on May 26, 2004, determining that Plaintiff was disabled effective September 11, 2002, and was entitled to SSI benefits beginning on that date but was not entitled to either SSI or DIB benefits prior to that date. The Appeals Council vacated this decision as well and remanded to a different ALJ for further proceedings. On January 30, 2006, a hearing was held before ALJ Paul R. Armstrong, at which Plaintiff appeared with counsel. On March 15, 2006, ALJ Armstrong issued a decision determining that Plaintiff became disabled on September 10, 2002, and was entitled to SSI benefits beginning on that date but was not entitled to either SSI or DIB benefits prior to that date. Plaintiff filed a Request for Review and the Appeals Council denied this request, making the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## FACTS

### A. Plaintiff's Background

Plaintiff was 41 years old on his alleged disability onset date of August 25, 1994, and turned 50 years old on November 11, 2002. Plaintiff had more than a high school education and previously worked as a pipe fitter and laborer.

2

## B. Medical Evidence

Plaintiff's back pain began after he fell from a ladder in 1990. He was diagnosed with a pinched nerve and underwent a course of physical therapy that helped at first. His pain began to increase after he returned to work.

Plaintiff injured his right ankle in 1994. He was diagnosed with a sprain. A 1995 x-ray revealed degenerative changes in the ankle.

In 1997, Dr. Wheeler examined Plaintiff for low back and right ankle pain. Dr. Wheeler noted that Plaintiff's gait was mildly antalgic and that he had discomfort with essentially all standing hip range of motion tests, with the extremes of flexion and extension giving him the most difficulty. Dr. Wheeler noted that Plaintiff had only mild spasm in his lower back, but that he had fairly significant tenderness along his lumbar spine and sciatic nerve. Dr. Wheeler also noted that Plaintiff had some palpable tenderness in and around his right ankle. She reported that Plaintiff had normal strength in his lower extremities and normal resistive strength in his right ankle in all directions. She noted that Plaintiff had some decreased sensation to pinprick in his thighs with normal pinprick sensation throughout the remainder of his lower extremities bilaterally. Dr. Wheeler diagnosed Plaintiff with lower back pain that may be consistent with radiculopathy and recommended that he undergo an MRI on his lumbar spine. With regard to Plaintiff's right ankle, Dr. Wheeler stated that her findings were consistent with a past injury that possibly was not fully rehabilitated and was now deconditioned. Dr. Wheeler recommended that Plaintiff continue taking his Daypro and Ultram as needed for pain.

Physician notes from 1998 indicate that Plaintiff had lower thoracic tenderness with marked limited range of motion and arthritic changes in thoracic spine, antalgic gait, arthritis and back pain,

3

reduced range of motion in the back bilateral knee crepitus, and right ankle pain, tenderness on flexion, and tingling in the fingers. Physician notes from 1999 report numbness in Plaintiff's fingers, with a diagnosis of carpal tunnel syndrome, severe paraspinal tenderness with severely decreased range of motion, severe osteoarthritis in his lumbar spine, and exacerbation of pain with radiation and numbness in leg bilaterally with some weakness, decreased motion in the back with positive straight leg test at 20 degrees.

In January 2000, Plaintiff presented to Dr. Melvin Richardson for an evaluation of his chronic back pain. Plaintiff also complained of numbness in his thigh that radiated from his lower back. Dr. Richardson noted that Plaintiff had decreased range of motion in his lumbar spine, some tenderness to passive movement of the right ankle, and moderated distress with passive movement.

In March 2000, Plaintiff returned to Dr. Richardson to obtain refills of his prescriptions. Plaintiff reported that he had no complaints at that time. Dr. Richardson reported that Plaintiff's medications were working well. He also noted that Plaintiff was ambulating well with a non-antalgic gait. In June 2000, Plaintiff again returned to Dr. Richardson to obtain refills of his prescriptions. Dr. Richardson again noted that Plaintiff had no complaints and that he was tolerating his medications well.

In June 2000, a physician completed a Workfare Medical Exemption form that indicated that Plaintiff was medically exempt from having to participate in a workfare responsibility program in order to receive township poor relief assistance. The physician checked a box on the form that indicated that Plaintiff was not able to work.

On June 19, 2000, Plaintiff reported to the emergency room with complaints of right ankle and left knee pain after he fell down some stairs at his apartment. Dr. John McGoff, the attending

4

physician, reported that Plaintiff was able to bear weight, but that it was somewhat painful. Dr. McGoff reported that Plaintiff had full range of motion in his back and neck with no limitation. Dr. McGoff reported that Plaintiff's left knee had some mild tenderness, but that there was no swelling and that Plaintiff had full range of motion in his knee. Dr. McGoff noted that Plaintiff had some swelling in his right ankle, but retained full range of motion. X-rays of Plaintiff's right ankle and left knee revealed evidence of degenerative joint disease. Dr. McGoff diagnosed Plaintiff with a left knee and right ankle sprain. Dr. McGoff recommended that Plaintiff apply ice, elevation, and an air cast to his ankle and an ACE bandage to his knee. Plaintiff was discharged from the hospital in stable condition.

In February 2001, a physician completed another Workfare Medical Exemption form, which indicated that Plaintiff was medically exempt from participating in a workfare responsibility program because he was not able to work.

In October 2001, Dr. Milton Bergal, Plaintiff's treating physician, completed a Workfare Medical Exemption form, which indicated that Plaintiff was medically exempt from participating in a workfare responsibility program because he was not able to work. Dr. Bergal did not provide any specific functional restrictions in support of his opinion.

In December 2001, a diagnostic study of Plaintiff's chest revealed no evidence of active cardiopulmonary disease.

Also in December 2001, Plaintiff completed a drug and alcohol questionnaire in support of his disability applications. Plaintiff reported that he drank one pint of whiskey and one six-pack of beer, and ingested three grams of crack cocaine each day, 7 days a week, 365 days per year. Plaintiff reported that he had become intoxicated and/or high 30 times in the last month. He stated

5

that he started using drugs and/or alcohol in the morning and typically spent 150 dollars per day on drugs and/or alcohol. Plaintiff claimed that he rented his bedroom out to people and played the lottery in order to pay for his drugs and alcohol.

In January 2002, Dr. A. Khan performed a consultative examination on Plaintiff. Plaintiff alleged that he was disabled due to arthritis in his back, knees, shoulders, neck, and ankles. Plaintiff denied any drug use and stated that he drank alcohol occasionally. Dr. Khan noted that Plaintiff was a well-developed, well-nourished, obese male. He reported that Plaintiff had a waddling gait with a limp, but that he remained capable of ambulating without any significant difficulties. Dr. Khan reported that Plaintiff was unable to walk heel to toe tandemly. Plaintiff was able to stoop, but was unable to squat. Plaintiff was able to get on and off the examination table without assistance. Dr. Khan noted that Plaintiff had a full range of motion in his extremities and all other joints. A straight leg raising test was negative. Dr. Khan reported that Plaintiff had normal muscle strength and tone with no muscular atrophy and no significant motor weakness. Dr. Khan also reported that Plaintiff had no sensory deficits. Dr. Khan diagnosed Plaintiff with (1) Rule Out Degenerative Disk Disorder of Spine; (2) Arthritis of the Shoulders, Knees, and Ankles; and (3) Hypertension, Controlled.

In February 2002, Dr. R. Fife, a state agency reviewing physician, completed a Physical Residual Functional Capacity Assessment form. Dr. Fife opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for at least 2 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday. Dr. Fife opined that Plaintiff could never climb ladders, ropes, or scaffolds, but could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He also opined that Plaintiff should avoid concentrated exposure to extreme cold and heat, wetness, vibration, and occupational hazards such as machinery, heights, etc.

6

In March 2002, Dr. Bergal composed a letter to the Department of Welfare, indicating that he had been treating Plaintiff for degenerative disk disease of the lumbar spine and degenerative arthritis of the knees. Dr. Bergal opined that Plaintiff was presently totally disabled.

In July 2002, Dr. Bergal completed another Workfare Medical Exemption form that indicated that Plaintiff was not able to work. Dr. Bergal did not provide any specific functional limitations in support of his opinion.

### C. January 30, 2006 Hearing

*1. Plaintiff's Testimony*

At the most recent administrative hearing, Plaintiff testified that he had problems with both knees and had used a cane since 1996 or 1997. He testified that he would be unable to sit for a prolonged period of time and would have to stand up and move around after about 15 minutes of sitting. Plaintiff also alleged that he was unable to stand for a prolonged period of time and would have to sit back down after about 10 minutes of standing. He testified that continuous activity for more than 25 or 30 minutes caused pain in his back that was relieved by laying down for an hour or more. Plaintiff testified that he was able to lift 10 or 15 pounds comfortably, but that he could not perform such lifting all day long. He further alleged that he would have difficulties staying awake due to his medications. Plaintiff testified that he was no longer drinking alcohol because of the medications that he was taking. He also testified that he frequently has problems with swollen knees and ankles requiring him to recline for an hour or two at a time. Plaintiff testified that he lived by himself and shopped, cooked, and drove a car on an occasional basis.

*2. Medical Expert Testimony*

Dr. Daniel Girzadas, a medical expert ("ME"), testified the medical evidence of record did not contain any findings that would preclude Plaintiff from performing sedentary work. The ME testified that objective medical findings from the 1990's were consistent with the state agency reviewing physician's assessment that Plaintiff was capable of performing a range of light work. The ME noted that medical records from 1999 indicated that Plaintiff had a normal gait, normal muscle power, and negative straight leg raising tests. The ME opined that Plaintiff did not meet or equal a listed impairment and that he remained capable of performing sedentary work that did not involve gripping bilaterally.

*3. Vocational Testimony*

At the administrative hearing, the ALJ described a hypothetical individual of Plaintiff's age, education, and work experience who was limited to sedentary work with a sit/stand option that did not involve forceful gripping bilaterally and required lifting of no more than 10 pounds occasionally. The hypothetical individual was further limited to jobs that did not involve work at unprotected heights, dangerous moving machinery, or open bodies of water. Mr. Lee Knutson, the vocational expert ("VE"), testified that such a hypothetical individual was capable of performing 5,400 jobs as an information clerk and 1,350 jobs as a surveillance system monitor. The VE further testified that if a person was off task 15 minutes per hour a day during the workday, if he missed two days of work per month, or if he had to sleep for an hour during the day he would not be employable.

### D. The ALJ's Decision

The ALJ found Mr. McClendon had the following severe impairments: degenerative disk disease in the lumbar spine, arthritis in the knees and right ankle, chest pain, pancreatitis, chronic polysubstance abuse, and hand pain. Based on these impairments, the ALJ made the following

8

finding: Plaintiff had the residual functional capacity to perform sedentary work, and was limited to lifting a maximum of 10 pounds, could occasionally carry items such as docket files, small tools, and ledgers, could not perform forceful gripping but could perform frequent fine finger manipulation, and needed a sit/stand option. Based on this residual functional capacity, Plaintiff was capable of performing the jobs of information clerk and system monitor prior to September 10, 2002; however, beginning September 10, 2002, Plaintiff became disabled based on Medical-Vocational Rule 201.14. This had the effect of finding Plaintiff eligible for Supplemental Security Income benefits as of September 10, 2002, but ineligible for Disability Insurance Benefits, because Plaintiff's insurance status expired on December 31, 1999.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment

for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard. *See Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000). If an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

An ALJ must articulate, at a minimum, his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The ALJ must build an "accurate and logical bridge from the evidence to his conclusion so that, as a reviewing court, we may assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Young v. Barnhart*, 362 F.3d 995, 1002 (7th Cir. 2004) (quoting *Scott*, 297 F.3d at 595); *see also Hickman v. Apfel*, 187 F.3d 683, 689 (7th Cir. 1999) (citing *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to Step 2; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to Step 3; (3) Does the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to Step 4; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to Step 5; (5) Can the claimant perform other work given the claimant's residual functional capacity ("RFC"), age, education, and experience? If yes, then the claimant is

not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At the fourth and fifth steps, the ALJ must consider an assessment of the claimant's residual functional capacity ("RFC"). "The RFC is an assessment of what work-related activities the claimant can perform despite [his] limitations." *Young*, 362 F.3d at 1000. The ALJ must assess the RFC based on all the relevant evidence of record. *Id*. at 1001 (citing 20 C.F.R. § 404.1545(a)(1)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Id*. at 1000; *see also Zurawski*, 245 F.3d at 886; *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff argues that the ALJ committed reversible error by: (1) failing to discuss evidence prior to Plaintiff's date last insured to determine eligibility for DIB; (2) providing a legally insufficient credibility determination and RFC finding under SSRs 96-7p, 96-8p and 02-1p; (3) failing to comply with the requirements of SSR 00-4p; and (4) failing to discuss VE testimony favorable to Plaintiff. Further, Plaintiff requests that (5) the Court reverse these proceedings and award benefits to Plaintiff, or, alternatively, remand for further proceedings.

### A. Evidence Prior to Plaintiff's Date Last Insured

The Plaintiff argues that the ALJ erred by failing to address medical evidence prior to Plaintiff's last date of eligibility for DIB, in effect a rejection of the DIB application without reasoning, explanation, or analysis of the evidence supporting the claim. The Commissioner asserts that the ALJ properly considered the medical evidence of record to determine that Plaintiff was not

disabled before his date last insured.

While the ALJ need not mention every piece of evidence in the record, he must provide an "accurate and logical bridge" between the evidence and the conclusion that the claimant is not disabled. *Zblewski v. Astrue*, No. 08-1755, 2008 WL 5206384, at *2 (7th Cir. 2008). The RFC assessment must include a narrative discussion which describes how the objective and subjective evidence supports each of the ALJ's conclusions. *Id.* "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184 (Jul. 2, 1996

The Commissioner points to phrases in the ALJ's decision that refer generally to Plaintiff's medical history, and argues that Plaintiff "failed to point to any significant objective medical evidence that was allegedly ignored by the ALJ which would undermine the ALJ's decision." Mem. in Supp. of Comm'r at 11. However, neither does the Commissioner point to any specific medical evidence or other records from before December 31, 1999, cited in the ALJ's decision. Although the ALJ need not discuss all evidence, he must consider all the evidence that is relevant to making a determination of disability and give enough information to allow for meaningful review. *Clifford*, 227 F.3d at 870; *Young*, 362 F.3d at 1002; SSR 96-8p. Examination of evidence prior to December 31, 1999, is particularly important in this case, since the ALJ was specifically directed by the Order of the Appeals Council to "[g]ive further consideration to the claimant's maximum residual capacity during the entire period at issue and provide rationale with specific reference to evidence of record in support of assessed limitations." Order of Appeals Council Remanding Case to Administrative Law Judge at 2, In re Stefan E. McClendon, Sr. (July 21, 2005). Not only did the ALJ fail to articulate his analysis of the evidence from prior to December 31, 1999, but his failure was in the

face of a direct order mandating that he do so.

Although dated after December 31, 1999, also of concern to the Court is the ALJ's failure to discuss four Workfare Medical Exemption forms. Beginning in June, 2000, they are forms completed by physicians that indicate Plaintiff could not work because of his physical ailments. At the very least, the ALJ should have addressed these forms, because "although a medical opinion on an ultimate issue such as whether the claimant is disabled is not entitled to controlling weight, the ALJ must consider the opinion." *Barnett v. Barnhard*, 381 F.3d 664, 669 (7th Cir. 2004) (citing SSR 96-5p, 1996 WL 374183 (Jul. 2, 1996)). Indeed, "opinions on any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." SSR 96-5p at *3. The Commissioner offers explanations as to why the ALJ did not address the forms, but these are post hoc rationalizations and there is not sufficient information in the record to allow the Court to determine whether the ALJ even examined them. On remand, the ALJ must examine the evidence of the Plaintiff's residual functional capacity during the entire period at issue, including the time period prior to Plaintiff's last date insured, and must provide specific reference to evidence in the record to support the assessment, including an analysis of the opinions from medical sources indicating that Plaintiff was disabled during the time prior to September 10, 2002.

**B. Credibility Determination**

Plaintiff argues that the credibility determination was legally insufficient because the ALJ did not adequately consider Plaintiff's statements about his pain or Plaintiff's obesity. The Commissioner contends that there is sufficient support for the ALJ's determination.

The Social Security Regulations provide that in making a disability determination the Commissioner will consider a claimant's statement about his or her symptoms, including pain, and how they affect the claimant's daily life and ability to work. *See* 20 C.F.R. § 404.1529(a). However, subjective allegations of disabling symptoms alone cannot support a finding of disability. *See id*. The Regulations establish a two-part test for determining whether complaints of pain contribute to a finding of disability: (1) the claimant must provide objective medical evidence of a medically determinable impairment or combination of impairments that reasonably could be expected to produce the symptoms alleged; and (2) once an ALJ has found an impairment that reasonably could cause the symptoms alleged, the ALJ must consider the intensity and persistence of these symptoms. 20 C.F.R. § 404.1529(a).

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). In making a credibility determination, Social Security Ruling 96-7p states that the ALJ must consider the record as a whole, including objective medical evidence, the claimant's statement about symptoms, any statements or other information provided by treating or examining physicians and other persons about the conditions and how they affect the claimant, and

any other relevant evidence. *See* SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996).

An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he or she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p at *6. An ALJ's credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

Plaintiff argues that the ALJ's credibility finding was impermissibly conclusory. If the paragraph cited by Plaintiff encompassed the totality of the credibility finding in the ALJ's decision, it might indeed be conclusory. However, the ALJ went on for several paragraphs describing the evidence he considered and why it led him to the conclusion that Plaintiff was not entirely credible. The ALJ took into account medical records, including reports of Plaintiff's pain, his daily activities, and inconsistencies in Plaintiff's statements about drug and alcohol use. The ALJ's credibility determination is afforded substantial deference by the reviewing court and will not be disturbed here.

Plaintiff also argues that the ALJ erred in failing to consider the impact of his obesity. The Commissioner argues that although the ALJ did not explicitly consider Plaintiff's obesity, he adopted limitations suggested by specialists and reviewing doctors who were aware of Plaintiff's obesity and thus adequately accounted for it in his decision.

Social Security Ruling 02-1p requires an ALJ to consider obesity as an impairment and the exacerbating effects of a claimant's obesity on his other conditions, even if the obesity is not itself

a severe impairment, when arriving at the RFC assessment. *Hernandez v. Astrue*, 277 F. App'x 617, 624 (7th Cir. 2008); *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). Here, multiple references to Plaintiff's weight are contained in the record, including his testimony at the April 7, 2003 Hearing regarding his weight, and this should have put the ALJ on notice regarding Plaintiff's obesity. *See Skarbek*, 390 F.3d at 504.

Nonetheless, the ALJ's failure to explicitly address Plaintiff's obesity was harmless error. *Ruiz v. Barnhart*, 518 F. Supp. 2d 1007, 1023 (N.D. Ill. 2006). In this case, "[n]o physician ever suggested, either implicitly or explicitly, that [Plaintiff's] obesity was exacerbating [his] physical impairments." *Id.* Plaintiff does not articulate how obesity exacerbated his underlying conditions, other than contending that obesity "can cause limitation of function" and that "a person who is obese and arthritic may experience greater limitations than a person who is only arthritic." Pl.'s Br. in Support of Mot. 14 (internal quotations omitted). As in *Skarbek*, "the ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of [his] obesity. Thus, ... [his obesity] was factored indirectly into the ALJ's decision" and failure to explicitly address it does not require remand. 390 F.3d at 504.

**C. Consistency of Vocational Expert Testimony with Dictionary of Occupational Titles**

Plaintiff argues that the ALJ erred in failing to identify and resolve conflicts between the Vocational Expert's ("VE") testimony and the Dictionary of Occupational Titles ("DOT").

"Under SSR 00-4p, ... the ALJ has an affirmative responsibility to ask if the VE's testimony conflicts with the DOT, and if there is an apparent conflict, the ALJ must obtain a reasonable explanation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)(citations and quotation marks omitted). Specifically, SSR 00-4p requires:

17

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and if the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, 2000 WL 1898704 at *4 (Dec. 4, 2000). "SSR 00-4p places an affirmative duty on the ALJ to resolve conflicts between the evidence the VE has provided and the Dictionary of Occupational Titles after the VE has testified. The ALJ cannot transfer his duty to the VE." *Kallio v. Astrue*, 2009 WL 500552 *9 (N.D.Ind. 2009)(citations omitted). It is the responsibility of the ALJ to resolve inconsistencies between the VE's testimony and the DOT. *Prochaska*, 454 F.3d at 736.

At the beginning of the VE's testimony, the ALJ instructed him to testify in accordance with the DOT. After he testified, however, the ALJ did not ask the VE whether his testimony was consistent with the DOT. The Commissioner asserts that this is harmless error and does not require remand because there was no actual conflict. Plaintiff argues that there are inconsistencies between the testimony and the DOT. As his primary example of inconsistencies, Plaintiff points out that the ALJ found that Plaintiff was limited to jobs with a sit/stand option, but the DOT descriptions for the jobs identified by the VE do not include a sit/stand option. The Commissioner addresses this claimed inconsistency by citing a number of cases for the proposition that "because the DOT does not address the subject of sit/stand options, it *is not apparent* that the testimony conflicts with the DOT." Mem. in Supp. of Comm'r at 18 (emphasis added) (citing *Zblewski*, 2008 WL 5206384 at *4). However, in the cases cited by the Commissioner the VE was asked whether his testimony was consistent with the DOT. There is a different standard when the ALJ fails to ask the VE if there is

a conflict: in these situations, the plaintiff is required only to demonstrate that there was some inconsistency between his testimony and the DOT, not that the inconsistency was apparent. *Prochaska*, 454 F.3d at 735-36; *see also Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (analyzing *Prochaska*). For this reason, the ALJ's failure to comply with the requirements of SSR 00-4p is not harmless error and requires remand.

**D. Consideration of Vocational Expert Testimony Favorable to Plaintiff**

Plaintiff argues that the ALJ erred by failing to discuss VE testimony favorable to him. In particular, the ALJ questioned the VE about the availability of jobs for people with particular limitations, including the need to elevate one's legs or sleep for an hour a day. These were limitations that Plaintiff testified to but which were not included in the RFC finding.

When an ALJ relies on testimony from a VE to make a disability determination, the ALJ must incorporate all of the claimant's limitations supported by medical evidence in the record. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *see also Kasarsky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003) ("Furthermore, to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate all relevant limitations from which the claimant suffers.") (citation omitted). If the VE is unaware of all of the Plaintiff's limitations, he may refer to jobs the Plaintiff cannot perform. *Kasarsky*, 335 F.3d at 543.

In this case, the ALJ included limitations in the hypothetical questions that went beyond those ultimately assessed in his RFC finding. However, as described above, the ALJ's RFC finding failed to address important evidence in the record regarding Plaintiff's claimed disability. The Court is remanding this case to the ALJ to examine all evidence of Plaintiff's RFC for the entire time period at issue and remanding for VE testimony consistent with the DOT. When new VE testimony

is adduced, the hypothetical questions addressed to the VE should take into account the appropriate RFC assessment.

### E. Remand

Finally, Plaintiff requests that the Court reverse the Commissioner's decision and remand for an award of benefits. An award of benefits is appropriate "only if all factual issues have been resolved and the record supports a finding of disability." *Briscoe ex rel. Taylor*, 425 F.3d at 356. This is not such a case. Here, the ALJ's opinion was not supported by substantial evidence because he failed to develop the record, leaving several issues unresolved. Further, although Plaintiff requests an award of benefits, he fails to present a developed argument in favor of doing so.

### CONCLUSION

For the foregoing reasons, the Court finds that the ALJ failed to appropriately articulate his analysis of the evidence to assure the Court that he considered important evidence, and committed legal error by failing to comply with the requirements of SSR 00-4p. In addition, new Vocational Expert testimony must be adduced that takes into account an appropriately-determined Residual Functional Capacity assessment. Therefore, the Court **GRANTS** the Plaintiff's Motion for Summary Judgment [DE 22] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 28th day of October, 2010.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record